UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SNÖFROST AB, AS THE WHOLLY OWNED SUBSIDIARY OF HOCH PARTNERS PRIVATE EQUITY INVESTORS, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| SUSANNE HÅKANSSON | ) ) |
| Defendant. | ) |

CIVIL ACTION NO.
18-10798-DPW

MEMORANDUM AND ORDER
December 19, 2018

All the relevant dimensions of this case, except the residence of the defendant, are grounded outside Massachusetts, indeed outside the United States. Yet, the plaintiff, Snöfrost AB, a Swedish company, filed the complaint in this action in this court to enforce an alleged agreement negotiated in Sweden to buy shares in a Swedish company.

In a curious inversion of the reflexive effort by most parties to obtain some perceived, if illusory, "home court" advantage, the defendant, Susanne Håkansson (the only party with Massachusetts contacts) has moved to dismiss the complaint on grounds of *forum non conveniens*. Ms. Håkansson argues that Snöfrost's claim should be addressed not by this court in Massachusetts, but by the Malmö District Court in the Kingdom of Sweden. For its part, the Swedish party, Snöfrost, opposes

1

change of venue to Sweden, and says it wants to litigate in
Massachusetts, despite its contention that the parties agreed to
a Swedish forum for arbitration.

Prescinding from the parties' anomalous positions
regarding preferred forum, I will grant Ms. Håkansson's motion
to dismiss on grounds of *forum non conveniens*, leaving pursuit
of this dispute to Swedish legal process.

## I. BACKGROUND[1]

The genesis of this case is the death of Ms. Håkansson's
father, Bo Håkansson, a prominent Swedish businessman. At the
time of his death, Mr. Håkansson owned, among other business
holdings, all the shares of Farstorps Gard AB ("FGAB").

After her father's passing, Ms. Håkansson, a United States
citizen, followed advice from various professional advisors and
pursued a strategy to minimize the tax burden associated with
the sale of the FGAB shares. This strategy involved several
steps: first, the liquidation of the real estate assets of FGAB;

---

[1]   For purposes of resolving this motion to dismiss, I act on
the basis that "[a]ll well-pleaded allegations in the complaint
bearing on the venue question generally are taken as true,
unless contradicted by the defendant's affidavits." *Turnley* v.
*Banc of Am. Inv. Servs., Inc.*, 576 F. Supp. 2d 204, 211 (D.
Mass. 2008) (quoting 5B Charles Alan Wright & Arthur R. Miller,
Fed. Prac. and Proc. § 1352 (3d ed. 2004)); *see also Am. Modern
Home Ins. Co.* v. *United Yacht Sales*, No. CV 4:16-40127-TSH, 2017
WL 5760914, at *2 (D. Mass. Sept. 7, 2017) ("[W]hen ruling on a
motion to dismiss for improper venue a court must treat all
well-pleaded facts in the complaint as true and draw all
reasonable inferences in favor of the plaintiff.")

second, assignment by Mr. Håkansson's other heirs of inherited FGAB shares to Ms. Håkansson resulting in her becoming the sole shareholder; and third, sale of the FGAB shares by Ms. Håkansson as an American resident, taking advantage of the step-up basis approach under the United States tax regime.

After acquiring all of the FGAB shares on or about December 20, 2017, Ms. Håkansson and her representatives — in particular her chief advisor Mr. Thomas Sträng, a Swedish tax consultant — sought potential buyers for the shares.

One potential buyer was Jean-Daniel Cohen, described in the complaint as "an overseas financial investor," represented by a Dutch tax consultant, Harry Rietveld. Beginning in January 2018, Ms. Håkansson's representatives entered into exclusive negotiations with Mr. Cohen.

After preliminary discussions, the parties held an in-person meeting on January 15, 2018, in Malmö, Sweden. On behalf of Ms. Håkansson, Mr. Sträng and Par Toms (another Swedish tax consultant) attended the meeting. On the other side of the negotiation table were Mr. Cohen and Mr. Rietveld. At this meeting, Mr. Sträng circulated a written share purchase agreement ("SPA"), drafted by Ms. Håkansson's retained counsel. Notably, the SPA contained both a choice of law clause stating that the agreement "shall be governed by and construed in accordance with the laws of Sweden without regard to its

principles of conflict of law" and an arbitration clause stating:

> Any dispute, controversy or claim arising out of or in connection with this Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration administered by the Arbitration Institute of the Stockholm Chamber of Commerce (the "SCC"). The Rules for Expedited Arbitrations shall apply, unless the SCC in its discretion determines, taking into account the complexity of the case, the amount in dispute and other circumstances, that the Arbitration Rules shall apply. In the latter case, the SCC shall also decide whether the Arbitral Tribunal shall be composed of one or three arbitrators.

At the January 15, 2018 meeting, the parties discussed various terms, including: the purchase price; balance sheet guarantees; a target closing date; and that a special purpose company would be formed by Mr. Cohen within the Hoch Partners Privates Private Equity Investors group to purchase the shares. That special purpose company became the plaintiff in this matter, Snöfrost. Ms. Håkansson's counsel, Johan Jacobsson, was given the task of refining the SPA to reflect the agreements reached at the meeting.

Following the January 15, 2018 meeting, Snöfrost readied itself for closing; in doing so, it paid particular attention to ensuring that the financial terms of the sale would not violate Swedish banking laws. The parties anticipated a closing date of February 16, 2018.

A few days prior to February 16, 2018, the parties communicated, and Mr. Sträng, on behalf of Ms. Håkansson, expressed concerns that a review of the transaction was still being conducted by Ms. Håkansson's banking institution. Snöfrost forwarded confirmation of funding from its financial institution and caused loan documents to be sent to Ms. Håkansson.  Snöfrost's loan was funded on February 14, 2018.

On February 14, Mr. Sträng called Mr. Toms and told him that Ms. Håkansson had chosen not to complete the sale.  Later that day, Ms. Håkansson's counsel communicated the same message to Snöfrost's counsel.

In a subsequent letter, Ms. Håkansson raised financing issues, alleging that these issues would not allow Ms. Håkansson to proceed with the sale on February 16, 2018.  Asserting uncertainties regarding the legality of the financing of the transaction under Swedish banking law and the uncertainty of the outcome of the Bank's review, the letter formally communicated Ms. Håkansson's decision to withdraw.

## II. ANALYSIS

The doctrine of *forum non conveniens* permits a court with jurisdiction (and where venue is proper) to decline to hear the case and decide the action should be addressed in another forum, based on the convenience of the parties and the court, and the

interests of justice.  *See generally Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235 (1981).

While Congress has enacted a statute, 28 U.S.C. § 1404(a), permitting federal courts to transfer venue between themselves for "the convenience of the parties and the witness," there is no such statutory mechanism for federal courts to transfer cases to foreign courts.  Instead, the doctrine of *forum non conveniens* is used to bring "about an international transfer of a case . . . where plaintiffs may bring approximately the same action in the foreign forum, but without the unfairness and inconvenience that trying the case in this country would entail." *Howe* v. *Goldcorp Investments, Ltd.*, 946 F.2d 944, 948 (1st Cir. 1991).

A court's *forum non conveniens* analysis begins with a presumption against the invocation of the doctrine.  This is because "there is a strong presumption in favor of a plaintiff's forum choice."  *Nowak* v. *Tak How Invs., Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996).  However, a foreign plaintiff's choice of forum "deserves less deference."  *Piper Aircraft Co.*, 454 U.S. at 255-56 ("[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable.") (internal citations

omitted).  Because Snöfrost is a foreign entity, I start with the presumption that its choice of forum is afforded diminished deference.

To litigate this case in Sweden, Ms. Håkansson must clear two hurdles.  First, she must prove that there exists an available and adequate alternative forum.  *Piper Aircraft Co.*, 454 U.S. at 255 n.22 (1981).  Second, she "must show that the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal." *Iragorri* v. *Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000).

I address those two inquiries in turn.

**A.    *Available and Adequate Alternative Forum***

To dismiss an action on the basis of *forum non conveniens*, I must be satisfied there is another forum that is both available and adequate.  Availability and adequacy are separate inquiries. *Mercier* v. *Sheraton Int'l, Inc.*, 981 F.2d 1345, 1350 (1st Cir. 1992); *Tazoe* v. *Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011).

1.    Availability

A foreign forum is deemed available "if the defendant demonstrates that the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amenable to service of process there."  *Iragorri*, 203 F.3d at 12

7

(citing *Piper Aircraft Co.*, 454 U.S. at 254 n. 22). As a
result, "an alternative forum generally is deemed available if
the case and all of the parties come within that court's
jurisdiction." 14D Charles A. Wright & Arthur R. Miller, Fed.
Prac. & Proc. § 3828.3 (4th ed.)

The identified alternative foreign court must have personal
jurisdiction over the defendant. For the purposes of ruling on
a motion to dismiss for *forum non conveniens*, this may be
satisfied if the defendant stipulates to submit to the foreign
court's jurisdiction. *See, e.g.*, *Lockman Found.* v. *Evangelical
All. Mission,* 930 F.2d 764, 768 (9th Cir. 1991); *Mercier*, 981
F.2d at 1350; *GE Capital Leasing Corp.* v. *Parametric Tech.
Corp.*, No. CIV.A. 07-11416-DPW, 2010 WL 3927787, at *6 (D. Mass.
Sept. 30, 2010).

Here, Ms. Håkansson is willing to stipulate to jurisdiction
of Swedish courts. She has submitted evidence, in the form of a
legal opinion from a Swedish law firm, LA PARTNERS, signed by
one its partners Magnus Bernro (the "LA PARTNERS Opinion"),
which states that, under Swedish law, such consent would be
effective. ("If the Defendant provides a voluntary submission
stating that it accepts the jurisdiction of the Malmö District
Court, that court would be obliged to respect such voluntary
submission and, having received the Plaintiff's application for
summons, to have jurisdiction over the case.") Snöfrost has

8

presented no evidence that undermines this legal opinion.  I am satisfied, subject to Ms. Håkansson's formal stipulation to submit to personal jurisdiction, that she is amenable to Swedish service of process.

In addition to personal jurisdiction, the foreign court must "permit litigation of the subject matter of the dispute." *Piper Aircraft Co.*, 454 U.S. at 255.  If the court does not have subject matter jurisdiction over the dispute, the foreign court cannot be said to be available.

As to subject matter jurisdiction, Ms. Håkansson has produced two legal opinions stating that Swedish courts have subject matter jurisdiction over this dispute.  One is written by Vinge, a Swedish law firm, and signed by one of its partners, Erik Sjoman (the "Vinge opinion").  The second legal opinion is the LA PARTNERS opinion, mentioned *supra*.  These opinions offer two legal bases why the Malmö District Court would have subject matter jurisdiction over the current action.[2]

_____

[2]  On October 16, 2018, I issued a procedural order requesting additional briefing on the question "whether this Court or the SPAs designated arbitral body (Stockholm Chambers of Commerce) should decide the threshold question of the existence *vel non* of a contract between the parties."  The parties' submissions did not address the question as it pertains to Swedish law.  Thus, albeit without briefing by the parties on the issue, I will assume in the apparent absence of a dispute raised by Snöfrost that as under the Federal Arbitration Act, whether a contract containing an arbitration clause exists under Swedish law is generally a question for a court, not an arbitrator.  *See, e.g.*, *Large* v. *Conseco Finance Servicing Corp.*, 292 F.3d 49, 53

First, a Swedish court would have jurisdiction pursuant to Ch. 10, § 4 of the Swedish Code of Judicial Procedure ("the Code"), which provides "[a] person with no known residence within the Realm who has entered into an obligation . . . in the Realm may be sued in a dispute concerning the same at the place where the obligation was created . . . ." Anticipating an argument from the Snöfrost that Ms. Håkansson cannot rely on this section of the Code because she denies the existence of any contract, both legal opinions state that, under Swedish law, under the "assertion doctrine," courts have jurisdiction based on a "plaintiff's *allegation* that a contract is entered into provided that the allegation is not clearly unfounded." While the opinions concede there is no case law directly on point

---

(1st Cir. 2002); *Specht* v. *Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002) ("It is well settled that a court may not compel arbitration until it has resolved "the question of the very existence" of the contract embodying the arbitration clause."); *Sphere Drake Ins. Ltd*. v. *All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001) ("[A] person who has not consented (or authorized an agent to do so on his behalf) can't be packed off to a private forum. Courts have jurisdiction to determine their jurisdiction not only out of necessity (how else would jurisdictional disputes be resolved?) but also because their authority depends on statutes rather than the parties' permission. Arbitrators lack a comparable authority to determine their own authority because there is a non-circular alternative (the judiciary) and because the parties do control the existence and limits of an arbitrator's power. No contract, no power."); *but see Primerica Life Ins*. *Co*. v. *Brown,* 304 F.3d 469, 472 (5th Cir. 2002) (plaintiff's defense of lack of mental capacity to enter into contract containing arbitration clause was a question for the arbitrator, not the court).

applying the assertion doctrine to Ch. 10, § 4 of the Code,
based on the reasoning of analogous cases and academic
commentary, the opinions state that the assertion doctrine would
apply.[3] As a result, Snöfrost's assertion as to a contract would
ordinarily be enough to establish jurisdiction pursuant to Ch.
10, § 4 of the Code.

Although the opinions do not offer direct legal authority,
they are firm — albeit not absolutely certain — in their
contentions that subject matter jurisdiction exists. Some
courts have suggested that, as evidence of jurisdiction, a
defendant must "put forth unequivocal, substantiated evidence
presented by affidavit testimony." *Raytheon Engineers &
Constructors*, *Inc*. v. *H L H & Assocs. Inc.*, 142 F.3d 1279 n.11
(5th Cir. 1998). This standard, with its proliferation of
adjectives of questionable authority[4] and usefulness for weighing

---

[3]   Since Sweden is a civil law jurisdiction, the lack of
authoritative case law is not particularly unusual or
surprising. *See V. Suarez & Co.* v. *Dow Brands, Inc.*, 337 F.3d
1, 8 (1st Cir. 2003) ("Puerto Rico is a civil law jurisdiction
and follows the rule of such jurisdictions of heavier reliance
on learned commentators than common law jurisdictions."; *Laubie*
v. *Sonesta Int'l Hotel Corp.*, 752 F.2d 165, 167 (5th Cir. 1985)
("In . . . a civil law jurisdiction, the legislative will, as
expressed in the articles of the Code, is supreme. Case law,
although valuable, is of secondary importance.); *Matos-Rivera* v.
*Flav-O-Rich*, 876 F. Supp. 373, 377 (D.P.R. 1995) ("The essential
difference [between civil-law and common-law methodology] may
merely relate to the degree of sanctity with which precedents
are regarded.") (citation omitted).
[4]  The standard of "unequivocal, substantiated evidence" appears
to have originated from a footnote in the case *Baris* v. *Sulpicio*

evidence, is, of course, not satisfied where unsubstantiated,
cursory, or wholly speculative claims concerning jurisdiction
are made. *Id.* (expressing doubts whether an unsworn declaration
of a Panamanian attorney "who stated, with no substantiation or
citation of Panamanian legal authority, that the Panamanian
court would take jurisdiction of the case" was sufficient); *see
also Varnelo* v. *Eastwind Transp., Ltd.,* No.
02CIV.2084(KMW)(AJP), 2003 WL 230741, at *16 (S.D.N.Y. Feb. 3,
2003), *adhered to sub nom. Varnelo ex rel. Estate of Varnelo* v.
*Eastwind Transp., Ltd.*, No. 02 CIV.2084 KMW AJP, 2004 WL 103428
(S.D.N.Y. Jan. 23, 2004) ("The Court cannot determine foreign
law based on garbled snippets of translated statutes or
summaries of Russian court decisions.").

Rather than burden inquiry with linguistic formulations
about "unequivocal" and "substantiated evidence," the better
approach, I believe, is to require a court to be relatively
secure in the knowledge that the action it dismisses can be
assumed by the alternative forum, and not languish in some
jurisdictional limbo. Here, I am satisfied Ms. Håkansson has

---

*Lines, Inc.*, 932 F.2d 1540, 1550 (5th Cir. 1991). However,
there is no analysis or discussion as to why such an absolutist
standard was chosen by the Fifth Circuit. This standard does
not appear to have been adopted by the First Circuit. Indeed,
courts do not often deal in absolutes particularly in this
context, and are limited in their ability to do so when the
exercise involves predicting how a foreign court is likely to
resolve a question of foreign law.

met her burden that Swedish courts would likely have subject matter jurisdiction based on Ch. 10, § 4 of the Code. Snöwfrost has presented nothing sufficiently contradicting or otherwise suggesting that this conclusion is erroneous.

Ms. Håkansson presents evidence of an additional, reinforcing legal basis to recognize subject matter jurisdiction in the Malmö District Court as outlined in LA Partners opinion. Pursuant to Ch. 10, § 18 of the Code, "as long as the Defendant does not object to the jurisdiction of the court, the Malmö District Court would be deemed to have jurisdiction over the case . . . and have no ground to dismiss the case." Pursuant to the Code, even if a court

> is not competent to entertain proceedings for dispute instituted in that court, the dispute *shall nonetheless be deemed to have been instituted in a competent court*, unless the defendant has made a timely objection to the competence of the court or has failed to appear in court at the first hearing or, if the preparation is in writing, omitted to submit an answer.

Ch. 10, § 18 (Emphasis added) (English translation provided by Ms. Håkansson).

Thus, so long as the defendant does not object to jurisdiction, the courts in Sweden will have subject matter jurisdiction. Ms. Håkansson has represented that she is prepared to provide a written stipulation to this effect and I

will require such stipulation be filed in this court as a condition to allowance of her motion to dismiss.

In summary, I am satisfied that Ms. Håkansson has made the requisite showing that the Swedish courts are available to hear Snöfrost's action.

## 2. Adequacy

Even if the foreign court is available to hear the dispute, a case still may not be dismissed on forum *non conveniens* grounds "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all . . . ." *Piper Aircraft Co.*, 454 U.S. at 254,; *Mercier* v. *Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991) ("[F]inding that there is a satisfactory alternative forum requires that . . . the parties will not 'be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.'") (quoting *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1165 (5th Cir. 1987)).

There is nothing in the record suggesting that the Swedish courts cannot provide an adequate remedy either in addressing the enforceability of the alleged contract and any reference to arbitration, or that the parties will be treated unfairly. As a result, I find the Swedish courts are adequate to hear Snöfrost's action.

14

**B.    *Public and Private Factors***

Having concluded the Swedish courts are an available and
adequate alternative forum, I turn to the second inquiry:
whether Ms. Håkansson has shown "that the compendium of factors
relevant to the private and public interests implicated by the
case strongly favors dismissal [in service of the forum *non
conveniens* doctrine]."  *Iragorri*, 203 F.3d at 12.

The Supreme Court identified various factors for
consideration in *Gulf Oil Corp.* v. *Gilbert*. 330 U.S. 501, 508
(1947) (Jackson, J.).  Private factors include: relative ease of
access to sources of proof; availability of compulsory process
for attendance of unwilling witnesses; the cost of obtaining
attendance of willing witnesses; and "all other practical
problems that make trial of a case easy, expeditious and
inexpensive." *Id.* at 508.  The public interest factors include:
"the administrative difficulties resulting from court congestion
in the plaintiff's chosen forum; the 'local interest in having
localized controversies decided at home'; the interest in having
the trial of a case conducted in a forum that is at home with
the governing law; the avoidance of unnecessary problems in
conflict of laws, or in the application of foreign law; and the
unfairness of imposing jury duty on citizens in an unrelated
forum." *Mercier*, 981 F.2d at 1354 (quoting *Piper Aircraft*, 454
U.S. at 241 n.6).

<u>1.</u>   <u>Location of Witnesses</u>

Almost all of the material witnesses were in Sweden when
the central event at issue — the January 15, 2018 meeting — took
place, including Mr. Strang, Mr. Toms, Mr. Jean-Daniel Cohen,
and Mr. Rietveld.  This is not a mere matter of numbers, but
rather focuses on the materiality of the witness testimony.  *See
Boston Telecommunications Grp., Inc.* v. *Wood*, 588 F.3d 1201,
1209 (9th Cir. 2009) (instead of assessing the number of
witnesses "in each locale" the court "should evaluate the
materiality and importance of the anticipated . . . witness'
testimony and then determine their accessibility and convenience
to the forum") (quoting *Lueck* v. *Sundstrand Corp.*, 236 F.3d
1137, 1146 (9th Cir. 2001)).  Snöfrost itself alleges that it
was at this meeting, where "the parties stood up, shook hands,
and acknowledged that all of the essential elements of the sale
transaction had been discussed and agreed upon . . . ."  These
witnesses, and others with potentially relevant testimony,
continue to be located in Sweden or elsewhere in Europe.
Moreover, Snöfrost is a Swedish entity.  While Ms. Håkansson is
located in the United States, she is prepared to submit to the
jurisdiction of Swedish Courts.  As a result, Sweden would be a
significantly more convenient forum than Massachusetts for the
witnesses in the case.

## 2. Availability of Compulsory Process for Unwilling Witnesses

Both parties spend considerable energy discussing the respective abilities of this court and Swedish courts to compel attendance of unwilling witnesses to testify. However, neither party suggests any of the potential witnesses are unwilling, or potentially unwilling, to testify. The onus is on the opposing party to show that unwilling witnesses exist. *Duha* v. *Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006) (citing *Manela* v. *Garantia Banking*, 940 F. Supp. 584, 592–93 (S.D.N.Y.1996)); *Mercier*, 935 F.2d at 428 (approving of a district court's analysis holding defendant had failed to establish that these witnesses would be unwilling to come to the United states to testify on a voluntary basis). Snöfrost does not rely on this factor.

## 3. Location of Events Underlying Action

The most "relevant actions, statements and omissions that underlie the plaintiff's" claims occurred in Sweden. *Howe*, 946 F.2d at 951. This is evidenced by the fact that the key meeting occurred in Sweden; in its complaint, Snöfrost highlights that this was the meeting where the key discussions "to finalize the negotiations of the intended transaction" occurred and at this meeting "all of the essential elements of the sale transaction had been discussed and agreed upon . . . ." This case, as

alleged, involves key negotiations in Sweden, between Swedish representatives for Ms. Håkansson and representatives of Snöfrost, a Swedish entity.  As to the facts, Sweden is, without a doubt, where the center of gravity lies.

#### 4.  Applicable Law

Whether or not the contractual choice of law provision is enforceable, this case would be governed by Swedish law.  This court would apply Swedish law pursuant to the choice-of-law rules of Massachusetts.  *Audi AG v. Peter J. McNulty Law Firm, Irwin & Boesen, P.C., Berger & Montague (In re Volkswagen & Audi Warranty Extension Litig.),* 692 F.3d 4, 14, 17 (1st Cir. 2012) (A federal court sitting in diversity applies the law that would be applied under the choice0of-law rules of the forum state). In Massachusetts, the courts apply a "functional approach to choice of law" which is "explicitly guided by the Restatement (Second) of Conflict of Laws (1971)." *Levin* v. *Dalva Bros., Inc.*, 459 F.3d 68, 74 (1st Cir. 2006) (citations omitted).

Pursuant to the Second Restatement, "the rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the *most significant relationship* to the transaction and the parties . . . ." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971).  In determining which state has the "most significant relationship," courts look to factors including the

place of negotiation of the contract, the place of performance
and the location of the subject matter of the contract. *Id.*
Importantly, the Restatement says "[i]f the place of negotiating
the contract and the place of performance are in the same state,
the local law of this state will usually be applied . . . ."
*Id.* § 188(3).

Here, Sweden plainly has the "most significant
relationship" with the alleged contract. First, the contract
negotiations happened in Sweden.[5] Second, as to performance,
according to the SPA the shares were to be transferred in
Sweden. Third, the subject matter of the alleged contract was
in Sweden, given that the company whose shares were to be sold
is incorporated under Swedish law. Thus, quite apart from the
alleged choice of law agreement of the parties, Massachusetts
would apply Swedish law. There is reason to believe a Swedish
court would not do the same.

To be sure, I am not required to make a definitive
determination regarding the choice of Swedish law as applicable
in order to resolve this factor. Likelihood is sufficient. *See*

---

[5] Snöfrost initially argues that "the Defendant has not
established that the contract was entered into *in Malmo*" because
other material terms were negotiated by "email and phone across
various countries." [Dkt. No. 14 at 9]. Contradicting itself
and undermining its own argument, Snöfrost then explicitly
concedes that what was the "substantially final version of the
SPA," was agreed to in Malmö, Sweden, and contains "*all* material
deal terms." (emphasis added). [*Id.* at 13].

*generally Corporacion Tim, S.A. v. Schumacher*, 418 F. Supp. 2d
529, 533 (S.D.N.Y. 2006), *aff'd sub nom. Corp. Tim, S.A. v.
Schumacher*, 223 F. App'x 37 (2d Cir. 2007) ("[T]he Court need
not ultimately decide the conflict of laws issue for purposes of
this decision, the likely application under New York's choice of
law rules of foreign law to this case weighs against retention
of the claim."); *Ioannides v. Marika Mar. Corp.*, 928 F. Supp.
374, 379 (S.D.N.Y. 1996) ("While the Court need not definitively
resolve the choice of law issue at this point, the likelihood
that foreign law will apply weighs against retention of the
action.")

The likelihood – indeed near certainty - that Swedish law
will govern is reinforced by the fact the SPA that Snöfrost
seeks to enforce has a choice-of-law clause stating that Swedish
law governs.  Yet, Snöfrost self-contradictorily claims, *see
also supra* note 5, for purposes of opposing forum *non conveniens*
dismissal that Massachusetts state contract law applies.  This
bizarre argument undercuts the express terms of the purported
contract Snöfrost seeks to enforce.  I find the argument
frivolous, unfounded and immaterial.  Whether there is an
enforceable choice-of-law agreement, Swedish law is likely to
apply.

The fact Swedish law likely applies is, of course,
relevant, but not "dispositive," to this court's analysis of the

appropriate forum. *Mercier*, 981 F.2d at 1357; *see also In re Banco Santander Sec.-Optimal Litig.,* 732 F. Supp. 2d 1305, 1339 (S.D. Fla. 2010), *aff'd sub nom. Inversiones Mar Octava Limitada* v. *Banco Santander S.A.*, 439 F. App'x 840 (11th Cir. 2011) (indicating the cost and inconvenience factor of proving foreign law weighs in favor of forum *non conveniens* dismissal)); *Scottish Air Int'l, Inc.* v. *British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996). Of course, "the task of deciding foreign law [is] a chore federal courts must often perform." *Id.* (citation omitted). Nonetheless, to prove Swedish law, affidavits and the associated translations of Swedish authorities would likely be marshalled by both parties. Combined with that cost and inefficiency, the practical reality is that a Swedish court would, by definition, be more competent to decide and apply the applicable Swedish law. As Judge Friendly once observed:

> [T]ry as we may to apply the foreign law as it comes to us through the lips of the experts, there is an inevitable hazard that, in those areas, perhaps interstitial but far from inconsequential, where we have no clear guides, our labors, moulded by our own habits of mind as they necessarily must be, may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact.

*Conte* v. *Flota Mercante Del Estado*, 277 F.2d 664, 667 (2d Cir. 1960) (citation omitted).

This factor weighs in favor of dismissal on *forum non*
*conveniens* grounds.

### 5. The Respective Interests of Sweden and the United States in the Action

There is a "local interest in having localized
controversies decided at home." *Mercier*, 981 F.2d at 1354.  As
discussed *supra,* it is evident that the center of gravity for
this dispute is in Sweden.  As compared to the United States,
Sweden has a far greater interest in deciding a matter brought
by a Swedish plaintiff concerning the ownership of a Swedish
company based on an alleged contract negotiated primarily in
Sweden.  *See Howe*, 946 F.2d at 953 (a case dealing with the
actions of a Canadian corporation and its agents were matters of
"principal[] . . . concern to Canada and Canadians.")

Snöfrost strains to suggest the United States has a
significant interest in hearing the case because Ms. Håkansson
was selling the shares as a part of an overall scheme to use
United States tax laws to minimize her father's estate's tax
liabilities.  That connection between the purported contract and
one party's motives for entering into such a contract, does not
alter the fact that this is essentially a Swedish contract
dispute.  The defendant's motives for pursuing the contract are

not directly relevant to whether the contract was formed by the parties and, if so, on what terms.

### 6.   Conclusion on Public and Private Factors

The private and public factors overwhelmingly point to Sweden as being the most convenient and appropriate forum for Snöfrost's action.

## III. CONCLUSION

Ms. Håkansson has made a compelling showing to overcome the background — but diminished — presumption in favor of Snöfrost's anomalous choice of forum.  As a result, subject to Ms. Håkansson executing and filing, on or before January 5, 2019 in this court a stipulation — containing the terms set forth below — to the jurisdiction of the Swedish courts, Ms. Håkansson's motion to dismiss [Dkt. No. 8] is granted.

It is hereby ORDERED that the stipulation to be executed and filed by Ms. Håkansson shall provide in words and substance:

That the defendant stipulates the Malmö District Court in the Kingdom of Sweden has personal jurisdiction over the parties; that it is a proper venue for this case and competent to address this dispute; and, further, that the defendant will be bound by that court's determination regarding the

enforceability, *vel non*, of the alleged agreement in dispute in this matter.

/s/ Douglas P. Woodlock
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE